Morphy, J.
The petitioner represents that, in the year 1830, she inherited from the succession of her father, Samuel Harbour, a sum of $2700, which was received by James S. Willis, her husband, and applied to his own use and benefit. That in consequence of the'embarrassed state of his affairs, all the property he possessed has been seized, and is advertised for sale, on the 11th of May, 1843, at the suit of Whiting &, SI ark. She avers, that she is entitled to a separation of property, and to be paid out of the proceeds of the land and slaves about to be sold, in preference to the seizing creditors. She prays accordingly, that she may be separated of property from her husband;, that she may recover against him the sum of $27(10; that the Sheriff may be ordered to retain said amount of the proceeds of the property when sold, and to pay the same to her, in .preference to all other demands against heT husband. Whiting & Slark answer, denying that the plaintiff has in law or fact, any cause of action or claim against them in the manner and form ^set forth in her petition. They aver, that the land and slaves seized as the defendant’s were on the. 11th of May, 1843, adjudicated to Charles Willis, the brother of the plaintiff’s husband, for the price of $5850 cash, under their execution : that by the written consent of the defendant, all the property was sold on his plantation, about fifteen miles from the court house and town of Baton Rouge, and about 11 o’clock, the time specified in the advertisement, without any notice to them, to the officer making the sale, or to the by-stand-©rs, of the claim now set up by. the plaintiff. That they (the respondents) were represented at the sale, and bid an amount which, by the certificate of mortgages then exhibited, was sufficient to cover prior liens and their execution, so as to entitle them to recover the sum due them in cash. That from the date of the or- , der authorizing the plaintiff to file her opposition, and the time when it was actually filed, to wit, after the officer had left in the morning to make the sale on the plantation, and when neither *89 they, the officer making the sale, nor any interested party could be put upon their guard, it is manifest that the object was, if possible, to obtain an unfair and unjust advantage, by inducing them, the respondents, to believe that their bid was sufficient to satisfy their demand in cash ; and that the laches and bad faith of the plaintiff should not deprive them of the benefit of their execution. There was a judgment below in favor of the plaintiff, from which the seizing' creditors have appealed.
The evidence shows, that the share or portion of the petitioner in the succession of her father, Samuel Harbour, amounted to $2730; thafat the probate sale of the estate, in 1830, James S. "Willis, her'husband, purchased property to the amount of $5205. and, among other things, the tract of land subsequently seized and sold at the suit of the appellants, and that the defendant signed, jointly with his wife, three receipts to the Probate Judge, for moneys stated to have been received from the estate of Harbour, largely exceeding the portion accruing to her. The Probate Judge, who was examined as a witness, testified that these receipts included, besides the portion of the defendant’s wife, moneys accruing to two minor heirs, who were his wards, and that they were signed without any money having been paid over by him to the defendant or his wife. The testimony is not as explicit as could be desired, in relation to the precise manner in which this settlement was made, nor does it account for the notes which the defendant ' appears to have given for the land, in 1830; yet, upon the whole, it impresses us, as it did the inferior Judge, with the conviction, that these receipts were given in payment of what Willis -owed to the estate of his wife's father, and that her hereditary portion, which was included in them, was thus received, and used by him to pay a debt contracted in his own name. As to the notes he may have given for the land, he can hardly be supposed to have signed receipts for moneys not paid to him, without having had these notes either cancelled or returned to him.
It is urged, on the part of the appellants, that the plaintiff’s opposition came too late, and could not affect their right to the money levied under their execution ; that it became theirs from the moment the adjudication was made ; that the proceeds of a sale are not to remain suspended in the hands of the Sheriff until one pre *90 tending to have a privilege on them establishes it by a judgment; and that a wife, who has only a general mortgage, and whose claim is not yet .liquidated, should not be permitted to sweep from a judgment creditor the fruits of his labor and diligence, «fee. The ca.se of Stafford and Husband v. Dunwoodie, (3 Rob. 276,) to which the counsel has referred us, has no bearing upon the present controversy. We there held, that the defendant, by his seizure, had acquired on the moveables seized á privilege or preference over the wife, because her rights, being merely paraphernal, gave her no privilege on the personal property of her husband. Bui the property sold in this case consisting' of land and slaves, the plaintiff had on them her legal mortgage, which existed long before the appellants had acquired any lien on the property by virtue of their seizure. The only question then which remains, is, whether the plaintiff can enforce her claim, in the manner and form she has thought proper to pursue. She appears to have proceeded under arts. 401, 402 and 403 of the Code of Practice. The two first of these provisions treat of persons having privileges or special mortgages, which entitle them to be paid in preference to the party making the seizure. They prescribe the course these persons are to pursue, and declare their absolute right to be paid in preference to the plaintiff in execution ; while the last article, which is more particularly applicable to this case, provides, that if the opponent have only a general or legal mortgage on the property seized, the plaintiff or seizing creditor shall be paid in preference, if he prove that the defendant has other property of sufficient value to satisfy the claim of the opponent. The appellants have failed to show that James S. Willis had any property left in his possession, after the seizure of his land and slaves. Morris, the Deputy Sheriff, testifies, that he has had several executions against him for months, and could find no property to satisfy them. He adds, however, that the defendant’s father died possessed of a tract of land, situated in the parish of Livingston ; but this land is shown to be worth about $1000, and the co-heirs of the defendant to be eight in number. Even had the defendant accepted the succession, which does not appear, and were it free from debt, his share or portion of it would be clearly insufficient to meet the plaintiff’s claim. As to the complaint in relation to *91 the time when the opposition was filed, and the injury sustained by the appellants, who allege that, had they had earlier notice of it, they might have secured their debt by making or procuring- a higher bid for the property, it can only be said that, admitting this to be the case, the plaintiff’s opposition cannot be rejected on that account, if offered in due time, as we believe it was. So long as the money levied under an execution has not been paid over to the seizing creditor, it is not too late to bring forward claims entitled to a preference. The money represents the property of which it is the proceeds, and is subject to the privileges and mortgages which existed on it. Code of Pract. arts. 401,402, 403. 7 Mart. N. S. 277.

Judgment affirmed.